IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN K. CRAWFORD,

    Petitioner,                           No. CIV S-03-2626 MCE JFM P

    vs.

DIANA K. BUTLER, Warden, et.al,

    Respondent.                    FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding in propria persona with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his April 14, 2000, conviction on charges of first degree burglary, CAL. PENAL CODE §§ 459, 460, and receiving stolen property, CAL. PENAL CODE § 496(a), the finding that he had four serious prior felony convictions within the meaning of the "three strikes law," CAL. PENAL CODE §§ 667(b)-(i), 1170.12, and that he had served two prior, separate prison terms, CAL. PENAL CODE §§ 667.5(b), and his sentence of 36 years to life in prison imposed thereon on August 11, 2000. Petitioner raises three claims in his petition, filed December 4, 2003, that his prison sentence violates the Constitution. Petitioner alleges that the giving of California Jury Instruction (hereinafter "CALJIC") No. 2.15 by the trial court violated his due process rights by allowing the jury to draw an impermissible inference of guilt as to the charge of first-degree burglary from the petitioner's possession of stolen property. Second, petitioner claims that his right to effective

1

assistance of counsel was violated when the trial court denied his motion to substitute counsel. Finally, petitioner argues that the trial transcripts were impermissibly altered, implicating him in the charged offenses and denying him a fair trial.

FACTS[1]

> As Mary R. was returning home for lunch on June 14, 1999, she observed defendant, whom she had never seen before, walking along the street looking into the windows of two nearby houses. A moped was parked in front of one of the houses. She lost sight of defendant when he walked behind a garage.
>
> While eating lunch, Mary R. became suspicious of defendant's conduct. Thus she drove back toward the houses where she had seen him. When she saw that the gate between the houses was open, she returned home and dialed 911. While waiting for the officers to come, she saw defendant walk out from the area of the houses. He was wearing or carrying gloves and went to the moped. Defendant then obtained a bag and walked back to the front of one of the houses, where Mary R. lost sight of him.
>
> As Mary R. was leaving her home to get the license plate number of the moped, Deputy Sheriff Jerry Bufford drove up. While Mary R. was telling Bufford about her observations, defendant drove off on the moped with "stuff in his possession." Bufford and other officers gave chase and stopped defendant. In his pockets were 14 gold chains and 18 gold rings. A duffel bag that he was carrying contained a video cassette recorder, a small stereo system, headphones, and camera equipment. He also possessed a pair of gloves.
>
> James C., the owner of one of the residences where Mary R. had seen defendant, identified all of the items, except the gloves and duffel bag, as having been stolen from his residence, which had been entered by a person who damaged the screen to a bedroom window that had been partly left open.
>
> Approximately one week after the burglary, James C. received a letter that defendant mailed from county jail. It stated: "Well I was laying in bed last night reading 'Revelation' in my Bible, and something came over me, and told me to write you and tell you that I'm sorry for what you've went through on the 14th of June and I pray that you would please forgive me."

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Crawford, No.# C036567 (January 30, 2002) (hereinafter Opinion), a copy of which is attached as Exhibit C to Respondent's Answer, filed January 28, 2004.

2

(People v. Crawford, slip op. at 2-3).

## ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

/////

The court looks to the last reasoned state court decision as the basis for the state court judgment. <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002).

II. <u>Petitioner's Claims</u>

    A. <u>The Trial Court's Jury Instruction Did Not Deny Due Process.</u>

Petitioner's first claim is that a jury instruction by the trial judge that permitted a presumption as to the charge of burglary to arise from the possession of stolen property violated due process. Petitioner contends that CALJIC No. 2.15, which permits the jury to infer that a defendant is guilty of burglary when he is in possession of stolen property and some other corroborating evidence is present, violates due process because it permitted the jury to convict with evidence not proven beyond a reasonable doubt. Petitioner's claim is without merit and denial is recommended.

The last reasoned rejection of this claim is the decision on petitioner's direct appeal by the Court of Appeal for the State of California, Third Appellate District. The state appellate court rejected this claim on the ground that:

> The court instructed the jury as follows: "If you find that a defendant was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crime of burglary. Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt. [¶] As corroboration, you may consider the attributes of possession – time, place and manner, that the defendant had an opportunity to commit the crime charged, the defendant's conduct, and any other evidence which tends to connect defendant with the crime charged." (CALJIC No. 2.15 (6th ed. 1996) p. 57.)
>
> Defendant contends the giving of CALJIC No. 2.15 deprived him of due process because it "permits a jury to find a defendant guilty of burglary based on his conscious possession of recently stolen property and only slight corroboration evidence," thereby conflicting with and lessening the burden of proof set forth in the reasonable doubt instruct, CALJIC No. 2.90. We disagree.
>
> /////

4

> Instructions are not considered in isolation; their correctness and adequacy is determined by consideration of the entire charge to the jury. (*People v. Wilson* (1992) 3 Cal.4th 926, 943.)
>
> Here the jury was advised that the instructions were to be considered as a whole, each in light of all the others. In addition to defining reasonable doubt and informing the jury that defendant was presumed innocent until the prosecution had proven him guilty beyond a reasonable doubt, the jury was instructed on the required elements of burglary and receiving stolen property, and was told that in order to prove those crimes, each of the elements must be proved.
>
> Given the entire instructional charge, the jury would have understood CALJIC No. 2.15 to preclude a finding of guilt of the burglary *only* on the fact that defendant was knowingly in possession of property taken in a burglary which had just occurred. The jury would also have understood that the inference of guilt permitted by CALJIC No. 2.15 could be drawn only if defendant's recent possession of the victim's stolen property *coupled with the corroborating evidence* was sufficient to prove defendant's guilt beyond a reasonable doubt. Consequently, the instruction did not lessen the prosecution's burden of proof. (*People v. Holt* (1997) 15 Cal.4th 619, 677.)

(People v. Crawford, slip op. at 9-11.)

In general, a challenge to jury instructions does not state a federal constitutional claim. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the Fourteenth Amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail on such a claim petitioner must demonstrate that the "ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" Middleton v. McNeil, 541 U.S. 433 (2004) (quoting Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 482 (1991)(quoting Cupp, 414 U.S. at 147)). In making its determination, this court must evaluate the challenged jury instructions "'in the

/////

context of the overall charge to the jury as a component of the entire trial process.'" Prantil, 843 F. 2d at 317 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).

An error in the giving of jury instructions is a "trial error" as distinct from a "structural defect." Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991); Drayden v. White, 232 F. 3d 704, 709 (9th Cir. 2000). A federal court may grant habeas relief based on trial error only when that error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)(quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). If a reviewing court is in "grave doubt" as to whether the error had such an effect, the petitioner is entitled to the writ. Coleman v. Calderon, 210 F.3d 1047, 1051 (9th Cir. 2000).

Petitioner did not object to the jury instruction. (Reporter's Transcript on Appeal [hereinafter "RT"] 503.) Timely objection is a necessary prerequisite in order to permit the trial court to correct any instructional mistakes before the jury retires. See Leary v. United States, 395 U.S. 6, 32 (1969). Absent an objection, the court is not permitted to review the due process claim made by petitioner. Osborne v. Ohio, 495 U.S. 103, 123 (1990).

Even if the court were to find a basis for review, there is no legal error on this issue warranting relief. The "category of infractions that violate 'fundamental fairness'" has been defined "very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990). An instruction that requires the jury to infer a finding, shifting the burden of proof from the prosecutor to defendant, violates a defendant's due process rights. See Carella v. California, 491 U.S. 263, 265 (1989). However, where that inference is permissive, the instruction is constitutionally sound. Ulster County Court v. Allen, 442 U.S. 140, 157 (1979).

The inference that a jury can draw from CALJIC No. 2.15 is a permissive one, neither required by the mere possession of stolen property nor mandated by the existence of other corroborating factors such as proximity to the crime scene, opportunity to commit the crime, or subsequent conduct. Schwendeman v. Wallenstein, 971 F.2d 313, 316 (9th Cir. 1992), cert.

denied, 113 S.Ct. 975 (1993). When the inference is permissive, allowing the jury to infer an essential fact from proof of another fact is lawful so long as "the inferred fact is more likely than not to flow from the proved fact on which it is made to depend." Id., (citations and internal quotations omitted). It is not unlikely that someone in conscious possession of recently stolen property acquired it during a burglary.

The Court of Appeal correctly noted that CALJIC No. 2.15 must be considered in the context of the instructions as a whole and the trial record. Cupp, 414 U.S. at 147. The jury in this case was advised of the presumption of innocence, (RT 561); the prosecution's burden to prove all elements beyond a reasonable doubt, (RT 562); that all facts essential to an inference must also be proved beyond a reasonable doubt, ( RT 555); and that competing reasonable interpretations of the evidence must be resolved in favor of the defendant, (RT 556). Given this context, there is not a "reasonable likelihood" that the jury could have understood CALJIC 2.15 to require something less than proof beyond a reasonable doubt. Boyde v. California, 494 U.S. 370, 380 (1990).

Furthermore, the trial record provides strong evidence of petitioner's guilt. Petitioner was seen casing the victim's apartment prior to the theft, was seen fleeing the scene, was caught with items taken from the victim's apartment, as well as gloves, and wrote a jailhouse confession to the victim just days after the burglary. Due to the strength of the evidence against petitioner, there is little likelihood of any misapplication of the jury instruction by the jury, nor can it be said that Petitioner's conviction violated due process. Estelle, 112 S.Ct. at 482; Boyde, 494 U.S. at 380. The finding on this issue was neither contrary to, nor an unreasonable application of Federal law. Petitioner's first claim for relief should be denied.

B. The Trial Court's Denial of Petitioner's *Marsden* Motion Was Not in Error.

Petitioner's second claim is that the trial court erred by denying his motion to dismiss appointed counsel. Petitioner claims that the relationship between he and his appointed

/////

7

counsel had inextricably broken down and, as a result, effective representation was no longer possible. Petitioner's second claim is without merit and denial is recommended.

> The California Court of Appeal addressed this claim as follows:
>
> Defendant contends the trial court erred when it "forced [him] to proceed with an attorney he completely mistrusted, resulting in a breakdown of the attorney/client relationship." The record does not support this claim.
>
> When a defendant seeks to have the trial court discharge his appointed counsel and substitute another attorney, he is "entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such irreconcilable conflict that ineffective representation is likely to result [citations]." (*People v. Crandell* (1988) 46 Cal. 3d 833, 854) However, "a defendant may not force the substitution of counsel by his own conduct that manufactures a conflict." (*People v. Smith* (1993) 6 Cal. 4th 684, 696.)
>
> At a *Marsden* hearing (*People v. Marsden* (1970) 2 Cal.3d 118) conducted prior to the commencement of trial defendant asked the court to appoint another attorney to represent him.
>
> Defendant first complained that the prosecutor had agreed to strike one of defendant's prior serious felony convictions, but then "put the strike back on [him] again." Appointed counsel explained that a settlement judge had offered to strike one of the prior conviction allegations if defendant entered a negotiated plea in exchange for a determinate term of 23 years, but that defendant refused the offer. Counsel then sought a better offer, a term of 18 years, and explained to defendant that it was better than an indeterminate term of 25 years. Once again, defendant rejected the proposal and told counsel "don't come back with any [more] offers" because "he wanted to go to trial." Defendant accused counsel of lying. According to him, she did not explain what sentence he would receive if a prior conviction allegation was stricken and, in defendant's words, "didn't give me a chance to – you know, do I want it or not." Counsel then reiterated that, contrary to defendant's claim, she informed him of the offer and its consequences.
>
> Defendant also faulted his counsel for "not doing what [he was] asking her to do," by filing a *Pitchess* motion (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531) on the ground the officers lied under oath at the preliminary hearing. In response, counsel stated that she told defendant why a *Pitchess* motion was not appropriate, that she complied with all of his reasonable requests, and that she was "willing to work with [defendant]" and was prepared to go to trial.

In denying the *Marsden* motion, the court concluded that any lack of communication was due to defendant's failure to "listen sometimes" and that a *Pitchess* motion would be unmeritorious and a "dismal waste of time."

During jury selection, a mistrial was declared at defendant's request when a prospective juror reported having observed that the prosecutor's file was stamped with the notation, "3 STRIKE CASE."

Before a new jury panel was summoned, defendant accused appointed counsel of "railroad[ing]" him. According to him, counsel had said she did not care about his case and had "let [him] know she's against [him]." During the *Marsden* hearing, defendant claimed that his counsel no longer was trying to help him and that talking with her was "like talking to the DA." Saying he would refuse to communicate with counsel, defendant asserted: "She revealed to me she's against me. She don't care. That's her job is to get rid of third strikers. That's what she saying. I don't care, you're a third striker. You shouldn't have done crime. All this. . . That ain't no lawyer to me." Defendant also claimed that counsel had not talked to him about the evidence and had not responded to his satisfaction when he asked what would occur if the victim did not show up at trial. Counsel disputed defendant's claims in great detail. She had spoken to him about the evidence and had attempted to explain the law to him; however, he thought he knew more about it than she and, "as usual," he argued with her. She had told defendant, "I've come to the point where I truly believe you do understand what is going on. You just don't like it. . . ." Counsel asserted that her "communication [with defendant] hasn't broken down," and she was "working very hard for [him]," and that she could assist him if he would simply listen to her. Noting that she had already been successful on a motion that was "very helpful to the defense," counsel ended by stating: "I don't have any bad feelings toward [defendant]. I don't want him to keep hurting himself in front of anybody else. I'm trying to keep him from hurting himself by not doing these motions again and having outbursts in court and trying to exit himself from the courtroom."

The court denied defendant's *Marsden* motion, concluding that he was receiving, "[a]dequate as well as intelligent and knowing representation," and that, while there was a "conflict" between defendant and counsel, it was "one-sided" and not "irreconcilable" or likely to result in ineffective representation.[sic]"

Defendant requested to represent himself, and the court granted the request but asked counsel to do her best to remain available in case if necessary.

/////

With defendant now representing himself, a jury was impaneled and the matter continued for several days. When the court convened again for the evidentiary stage of the trial, defendant requested a continuance, saying he was not prepared to go forward. The court denied the request. Defendant then stated that he would not "have anything to do with this trial" and that "Y'all can take me back to my cell." Later, defendant said that whenever the court asked him a question he would tell the jury, "I'm not ready." The court admonished him not to do so before the jury. Four witnesses then testified. At the end of direct testimony of each witness, the court asked defendant whether he wished to cross-examine. Each time, he responded that he was not prepared to defend himself, adding on one occasion that the court had not given him adequate time to prepare.

On September 30, 1999, the court granted a "joint" motion for a mistrial when the prosecutor informed the court there had been "late discovery of. . . potentially exculpatory evidence. . . ."

The trial resumed again on March 20, 2000, and defendant said he was not prepared to proceed. Following a recess, defendant informed the court that he had "decided to give up [his] pro per for a lawyer." When the court told him it was too late to do so, defendant said he was not going to go to trial because the prosecutor and court reporter were "crooked" and the court reporter falsified the transcripts. Defendant threatened that, if forced to trial, he was "going to tell every jury. . . everything. . . ." Defendant then refused to participate in jury selection.

The following day, defendant refused to participate in further pretrial discussions, so appointed counsel who had been relieved was contacted and returned to court. The court found defendant had abused his pro per status by not cooperating, by plugging his ears with his hands when spoken to by the court, and by refusing to participate in jury selection. The court revoked defendant's status, appointed counsel to represent defendant again, and declared another mistrial at counsel's request because counsel needed time to prepare for trial.

On April 11, 2000, defendant's fourth trial commenced, and he made another *Marsden* motion. During the hearing, he recounted his prior reasons for wanting counsel relieved but added that he had now filed a complaint against her with the State Bar of California. Counsel acknowledged that defendant did not like her, but assured the court that she held no animosity toward him and was prepared for trial. She also disputed defendant's complaints. She advised the court, however, that the three times she had attempted to have contact with him since her reappointment, defendant had refused to see her.

/////

10

> The trial court denied the motion, finding "there is not a conflict between the defendant and his attorney such that she could not continue to adequately represent him."
>
> During the afternoon session, defendant became disruptive and continued such behavior despite a multitude of warnings from the court that disruption would not be tolerated.  Ultimately, defendant was removed from the courtroom for violating the court's order to refrain from outbursts and from talking to the jury.  The following day, defendant was afforded the opportunity to reconsider participating in his trial, but he declined to do so stating he would continue to be disruptive.  He also turned down the opportunity to view the trial from another location through cameras set up in court.  The trial proceeded in defendant's absence, and he was convicted as charged.
>
> Relying solely on his own testimony during *Marsden* hearings, defendant argues "it is indisputable that there was a complete breakdown in communication between [defendant] and his trial counsel. . . .  As a result, [defendant] had no confidence in counsel's representation.  He was convinced that counsel was working against his interests in cooperation with the prosecutor." It follows, he argues, that the court erred in forcing him to go to trial represented by that attorney.
>
> As we have noted, counsel disputed defendant's claims of deficient representation and stated there was no irreconcilable conflict if he simply would cooperate with counsel.  In denying defendant's *Marsden* motions, the trial court necessarily believed counsel's version of events and disbelieved defendant.
>
> Without question, the record as recounted above amply supports the conclusion that the conflict between defendant and his counsel was of defendant's own making, and that defendant's accusations were obviously manufactured in an effort to avoid going to trial.
>
> "[A] defendant may not force the substitution of counsel by his own conduct that manufactures a conflict." (*People v. Smith*, *supra*, 6 Cal.4th at p. 696.)  Hence, the court correctly denied all of defendant's *Marsden* motions and properly required him to proceed to trial with appointed counsel.

(People v. Crawford, slip op. at 3-9.)

The Sixth Amendment to the Constitution guarantees the right to effective and competent assistance of counsel in a criminal prosecution.  Strickland v. Washington, 466 U.S. 668 (1984).  Where a defendant is proceeding with the assistance of counsel, he may move to dismiss or substitute counsel, whether appointed or retained.  The grant or denial of such a

11

motion may depend on its timeliness and the nature of the conflict between the defendant and current counsel.  United States v. McClendon, 782 F.2d 785, 789 (9th Cir. 1986).  In assessing on direct appeal a federal trial court's decision to deny a motion to substitute counsel, the court looks at three factors:  "'(1) timeliness of the motion to dismiss counsel; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense.'"  Id. (quoting United States v. Mills, 597 F.2d 693, 700 (9th Cir. 1979)).  See also, United States v. Musa, 220 F.3d 1096, 1102 (9th Cir. 2000).  A denial of a motion for substitution of counsel on the first day of trial will be upheld where there is insufficient showing of conflict with current counsel.  McClendon, 782 F.2d at 789.  Additionally, it is within a trial judge's discretion to deny a motion to substitute made on the eve of trial if the substitution would require a continuance.  Id.

In assessing such a claim in the context of a habeas corpus proceeding, the focus is different than that on direct review.  In Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000) (en banc) the court stated:

> Our primary reason for accepting this case for en banc review was to correct the standard of review we have been using to examine the constitutionality of a state court's handling of a motion to substitute appointed counsel based on allegations of an irreconcilable conflict.  In Bland, we said that the test is whether a state court's denial of such a motion was for an "abuse of discretion." Bland, 20 F.3d at 1475.
>
> * * *
>
> [O]ur only concern when reviewing the constitutionality of a state-court conviction is whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  See also Coleman v. Thompson, 501 U.S. 722, 730, 111 S.Ct. 2546. 115 L.Ed. 640 (1991) ("The [habeas] court does not review a judgment but the lawfulness of the petitioner's custody simpliciter.") (emphasis in original).  A particular abuse of discretion by a state court may amount also to a violation of the Constitution, but not every state court abuse of

/////

> discretion has the same effect. Accordingly, to the extent that they conflict with this opinion, we overrule <u>Bland</u> and <u>Crandell v. Bunnell</u>, 144 F.3d 1213 (9th Cir. 1998).

<u>Id</u>. at 1024-25 (footnotes omitted). In <u>Schell</u> the court determined that it was "well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds of such a motion, and that the matter be resolved on the merits before the case goes forward." 218 F.3d at 1025; <u>see also</u> <u>Hudson v. Rushen</u>, 686 F.2d 826, 829 (9th Cir. 1982) ("Thus, the state trial court's summary denial of a defendant's motion for new counsel without further inquiry violated the Sixth Amendment.")

Under such an inquiry the state trial court's handling of the motion to substitute appointed counsel in this case certainly passes constitutional muster. The trial court allowed petitioner the opportunity to fully explain on the record his problems with his attorney. The court focused on and fully explored the nature of the conflicts expressed by petitioner. The undersigned finds that the trial court made an adequate inquiry into petitioner's complaints and resolved the matter on the merits before proceeding with the case.

This does not end the inquiry. According to the court in <u>Schell</u>:

> Thus, the ultimate question the federal courts must answer here is not whether the state trial court "abused its discretion" in not deciding [defendant's] motion, but whether this error actually violated [defendant's] constitutional rights in that the conflict between [defendant] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment.

<u>Id</u>. at 1026. Trial counsel met this standard, providing effective assistant to petitioner. Trial counsel affirmed before the court that she was able to represent petitioner. (RT 351.) There was no indication that counsel's performance was fatally impacted by petitioner's actions.

Petitioner's attempts to characterize his actions as non-dilatory are not supported by the record. While two of the three mistrials in this case were not the result of actions by petitioner, the record indicates that petitioner clearly sought to obstruct the orderly progress of his

13

trial. The source of disagreement over petitioner's representation came solely from petitioner's refusal to cooperate in his own defense, including refusing to respond to his attorney's requests for information or to attend the trial. There was no credible basis for petitioner's conflict with his attorney and when asked to cite a basis for his complaints, petitioner was unable to clearly articulate any fundamental disagreement. Rather, petitioner's complaints focused upon his perception that trial counsel was not "representing [him] right," (RT 344), was failing to filing otherwise frivolous motions, (RT 345), and was cooperating too readily with the prosecutor, (RT 354). As a result of the lack of justification, the trial court found petitioner to be not credible when compared to his attorney. That finding is not clearly erroneous and this court must defer to it. 22 U.S.C. § 2254(d).

Petitioner is not entitled to a "meaningful relationship with his attorney," Morris v. Slappy, 461 U.S. 1, 13-14 (1983), but rather, effective representation. Counsel's performance at trial was competent and there is no evidence that any doubts about the advisability of going to trial negatively influenced her performance. Furthermore, disagreement does not warrant relief as Petitioner only has a right to effective representation, not to an attorney who shares his opinion on trial tactics. See United States v. Mejia-Mesa, 153 F.3d 925, 931 (9th Cir. 1998); see also Schell, 218 F.3d at 1026 n.8 (quoting Brookhart v. Janis, 384 U.S. 1, 8 (1966)(Harlan, J., dissenting in part))("'[A] lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval.'"). Although petitioner faults counsel for failing to pursue numerous motions, there is no indication such motions would have been fruitful. Finally, while it appears from the record that petitioner's attorney believed the best resolution of this case was a plea agreement, she prepared for a possible trial and was able to skillfully represent petitioner when required.

A conflict which causes problems in some area of the attorney-client relationship but which ultimately has no significant impact on counsel's representation before the court does not rise to ineffective assistance. See Cuyler v. Sullivan, 446 U.S. 335, 348-350 (1980); see also

United States v. Mett, 65 F.3d 1531, 1535 (9th Cir.1995).  Under the circumstances presented here, the trial court did not err in denying petitioner's request for new counsel.  See United States v. Robinson, 913 F. 2d 712, 716 (9th Cir. 1990) (no error in failing to offer defendant substitute counsel where the crux of the problem was defendant's anger at his attorney's refusal to raise defenses to the charges which the attorney considered frivolous); see also United States v. Padilla, 819 F.2d 952, 956 (10th Cir. 1987) (finding that defendant's complaints that his appointed counsel refused to structure a defense as he directed did not constitute good cause for substitution of counsel and stating, "there is no absolute right to counsel of one's choice").  Accordingly, the state court's ruling was neither contrary to nor an unreasonable application of Federal law.  Petitioner's Marsden claim should be denied.

### C. There Was No Error with Petitioner's Pretrial Transcripts that Warrants Relief.

Petitioner's third claim is that his pretrial transcripts were altered so that they no longer reflect the true nature of the preliminary hearing.  Petitioner argues that key testimony from his pretrial hearing was removed from the final transcripts, and other testimony contained therein did not occur at the hearing.  Petitioner claims this alteration prevented him from receiving a fair trial.  Petitioner's claim should be denied.

The last reasoned rejection of this claim is the decision on petitioner's direct appeal by the Superior Court of California, County of Sacramento.  The state court rejected this claim on the ground that:

> Petitioner claims that the transcript of his preliminary hearing held on July 20, 1999, was tampered with to wrongfully convict him of burglary.  He claims that certain testimony of witnesses and statements of counsel were omitted and that the actual testimony at the preliminary hearing was changed in the transcript.
>
> Petitioner's claim is not reviewable now that he has received a trial.  Errors at the preliminary hearing are not reviewable on appeal or by writ of habeas corpus unless they deprived the defendant of a fair trial or otherwise caused prejudice.  (See People v. Millwee (1988) 18 Cal.4th 96, 122; People v. Talhelm (2000) 85 Cal.App.4th 400, 404-405.)  Petitioner has not shown how errors in
/////

> the preliminary hearing transcript denied him of a fair trial or otherwise caused prejudice.
>
> Even if the court were to consider his claim, the evidence he provides does not support his claim that the transcript was tampered with. In fact, the evidence shows that his claims are just plain frivolous.
>
> He claims that two transcripts filed by "F. Kilgore" and "N. Hashimoto" were filed by persons who work in the District Attorney's office. He concludes from this that his attorney received the transcripts from the prosecution and suggests there was a conspiracy involving his own attorney to falsify the transcripts. "F. Kilgore" and "N. Hashimoto" are deputy clerks with the court and do not work for the District Attorney's office.
>
> He also notes that the two transcripts he received from his attorney were both file-stamped July 27, 1999, and certified as complete and accurate by the court reporter on July 21, 1999, but they have different words and different type. Although both of these transcripts are file endorsed on July 27, 1999, the second one bears the notation "nunc pro tunc," which means that it was received after July 27, 1999, and is the corrected copy. The second transcript corrected two obvious typographical errors: "2. . . the front" was changed to "to. . . the front" and "double bag" was changed to "duffel bag."
>
> Petitioner claims that the third transcript, which was purchased by a friend, shows that the transcript was falsified because it has different type than the other two. Contrary to petitioner's assumption, court reporters do not make Xeroxed copies of transcripts, but instead print them from a computer, which can result in different font or print.
>
> Petitioner's attorney explained to petitioner at a Marsden hearing that his transcripts were not falsified. And the Court explained to him again at the sentencing hearing. Petitioner now claims that the transcripts of the Marsden and sentencing proceedings were falsified to include these statements. He provides absolutely nothing to support this claim.

(People v. Crawford, attached as Exhibit G to Respondent's Answer, filed January 28, 2004.)

Petitioner has not presented a colorable claim of any constitutional violation. In order to be colorable, a claim must have both legal and factual support. Beaudry Motor Co. v. Abko Properties, Inc., 780 F.2d 751, 756 (9th Cir.), cert. denied, 479 U.S. 825 (1986). A claim is not colorable if it is factually unsupported, legally unsupported, or both.

As noted by the Superior Court, Petitioner presents no factual support for his claim. The state court's factual findings on this issue are entitled to a presumption of correctness, and there is nothing clearly erroneous about the court's evaluation of the editing and printing services that accompanied petitioner's transcripts. 28 U.S.C. § 2254(e)(1). Petitioner presents a cornucopia of previously filed exhibits to support his claim, including letters to trial judges requesting investigation of this issue, motions for court records, motions seeking to amend the state habeas corpus petition, and a motion for a continuance; however, none of those exhibits upset the presumption that accompanies the state court findings. There is nothing in petitioner's materials or the record to suggest any tampering which warrants relief.

Without some affirmative evidence, petitioner's own memory of events that are alleged to have occurred during the preliminary hearing, when compared to the official transcript and the memories of petitioner's trial counsel and the judge, do not create a due process violation. "Conclusory allegations which are not supported by a statement of specific facts do not warrant federal habeas relief." James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). Implicit in this legal maxim is a requirement that the facts alleged contain some element of truth. As shown by the state court, the other proof alleged by petitioner, corrections in two misspelled words, filings by different employees of the clerk's office, and differing type fonts, do not carry any of the weight petitioner ascribes to them. Nothing in petitioner's claim demonstrates any improper alteration entitling him to relief.

Furthermore, even if the court were to construe petitioner's allegations as improper tampering with the official transcript, petitioner has failed to demonstrate how those changes resulted in prejudice. Without such a showing, there can be no violation of due process. See Tedford v. Hepting, 990 F.2d 745, 746 (3rd Cir. 1993). Consequently, the Superior Court's finding on this issue was neither contrary to nor an unreasonable application of Federal law. Petitioner's third claim for relief should be denied.

/////

1  For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's
2  application for a writ of habeas corpus be denied.
3  These findings and recommendations are submitted to the United States District
4  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days
5  after being served with these findings and recommendations, any party may file written
6  objections with the court and serve a copy on all parties.  Such a document should be captioned
7  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
8  shall be served and filed within ten days after service of the objections.  The parties are advised
9  that failure to file objections within the specified time may waive the right to appeal the District
10 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
11 DATED:  January 25, 2007.

UNITED STATES MAGISTRATE JUDGE

13
Craw2626.157.wpd